IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERRIE L. GAGE, ) <br> ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> METROPOLITAN WATER RECLAMATION ) <br> DISTRICT OF GREATER CHICAGOLAND, ) <br> a municipal corporation; DAVID ST. PIERRE, ) <br> individually and in his official capacity; DENISE ) <br> E. KORCAL, individually and in her official ) <br> capacity; EILEEN M. MCELLIGOTT individually ) <br> and in her official capacity, and UNKNOWN ) <br> OTHERS, individually and in each of their ) <br> official capacity, ) <br> ) <br> Defendants. ) | Case No. 16 C 8072 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cherrie L. Gage brought an amended complaint against defendants alleging five counts, all based on racial discrimination and retaliation she allegedly suffered as part of a conspiracy and in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000 et seq.("Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1985. Defendants moved to dismiss the amended complaint in its entirety under Rule 12(b)(6) for failure to state a claim. For the reasons described below, defendants' motion is granted in part and denied in part.

## BACKGROUND[1]

Plaintiff's amended complaint alleges five counts: racial discrimination and retaliation in violation of 42 U.S.C. § 1981 (Counts I and II); racial discrimination and retaliation in violation

---

[1] The following facts are taken from plaintiff's amended complaint and are assumed to be true for purposes of this motion to dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

of Title VII (Counts III and IV); and conspiracy in violation of 42 U.S.C. § 1985 (Count V). At the heart of plaintiff's amended complaint is an alleged failure of her employer, the Metropolitan Water Reclamation District of Greater Chicago ("MWRDGC"), to promote her. Plaintiff holds MWRDGC's Executive Director, David St. Pierre ("St. Pierre"), its Director of Human Resources, Denise Korcal ("Korcal"), and its Administrative Services Manager of the General Administration Department, Eileen McElligott ("McElligott"), responsible for that failure.

Plaintiff, an African-American woman, began working for MWRDGC as an administrative assistant in 1989. Plaintiff was promoted to the Management Analyst ("MA") position in 1991 and was again promoted, this time to the Management Analyst 2 ("MA2") position, in 1999. Plaintiff allegedly "encountered race discrimination" upon reaching the MA2 level and was denied promotion to the Management Analyst 3 ("MA3") and Management Analyst 4 ("MA4") positions because of her race. As a result of this alleged discrimination, plaintiff filed a complaint against MWRDGC with the Equal Employment Opportunity Commission ("EEOC") in 2001 and a federal lawsuit in 2002. The parties settled in 2005 and plaintiff resumed her MA2 position, allegedly with the expectation that she was qualified and could apply for the next available MA3 position.

According to plaintiff, since she initially assumed the MA position in 1991 she "has been repeatedly recommended for promotion by Management" and "lauded by Directors for her diligence and assistance." Plaintiff additionally alleges that her performance has been consistently rated "from effective to the highest rating of highly effective." Despite this exemplary performance and history of being recommended for promotion, plaintiff alleges that she was denied promotion to the MA3 and MA4 levels from the time she returned to MWRDGC

in 2005 until 2012. Plaintiff alleges that eight other MWRDGC employees were promoted to these positions during this time, at least one of whom was Caucasian, and that most of them were less experienced and scored lower on an examination administered to all candidates.[2] Plaintiff claims that coworkers told her that her immediate supervisor in the General Administration Department, McElligott, refused to promote plaintiff because plaintiff was not qualified for the MA3 and MA4 positions regardless of her performance reviews and exam scores.

Plaintiff's luck changed in January 2012 when the Director of Information and Technology ("IT"), also an African-American, promoted plaintiff to an MA3 position in that department. Then, at some point in 2014, an MA4 position became available and plaintiff was one of five candidates who were eligible to be interviewed due to being on an "eligibility list" that was compiled in 2011 and, at the time, still in effect.[3] Plaintiff alleges that she was the only candidate who was both in the "in-line position of MA3" and rated as "exceptionally well qualified." Plaintiff further alleges that MWRDGC's Equal Employment Opportunity representative recommended to the Executive Director (presumably St. Pierre) that the open MA4 position be filled by a minority.

---

[2] Plaintiff alleges that the following steps comprise the promotion process at MWRDGC: (1) written notification of an examination; (2) formal application by employees and outside persons; (3) acceptance letters from MWRDGC to candidates approved to sit for the examination; (4) administration of the examination; (5) posting of examination grades to eligibility lists with three categories of passing grades: (a) exceptionally well qualified; (b) well qualified; and (c) qualified; (6) MWRDGC department and human resource staff conduct interviews of qualified candidates; (7) MWRDGC staff make recommendations to the Executive Director; and (8) Equal Employment Opportunity representative makes recommendations to the Executive Director.

[3] The eligibility lists remain in effect for three years, after which time a new examination is administered and new lists are compiled based on the results of that examination.

Plaintiff was interviewed for the MA4 position, but did not receive the promotion. Instead, defendants allegedly "terminated the promotion process without explanation" and waited until the 2011 eligibility lists expired, presumably with the intent to fill the MA4 position with someone other than plaintiff selected from the 2014 eligibility lists. Plaintiff sat for the 2014 exam and alleges that it was "crafted to be unusually difficult" in "an attempt by the co-defendants to cause [plaintiff] to get a grade less than the 'A' she obtained on the 2011 exam[ ]." Plaintiff scored a "B" on the exam, which earned her one of only two spots on the "well qualified" eligibility list because that was the highest grade achieved by anyone taking that exam. The other spot was held by a Caucasian employee, who was promoted to the MA4 position instead of plaintiff.

According to plaintiff, she should be the next in line for promotion to MA4 and her direct supervisor, John Sudduth, who is also an African-American, recommended to Korcal that plaintiff be promoted to the MA4 position in July 2015. Plaintiff claims that Korcal rejected the suggestion and that plaintiff is being referred to as "damaged goods" to prevent her promotion, though plaintiff does not allege by whom. Plaintiff further alleges that after Sudduth made the recommendation, St. Pierre and Korcal opened an overly intrusive investigation into an "unprofessional conduct" complaint against Sudduth and plaintiff, which involved "an intense series of personal interviews with MWRD[GC] employees" regarding their interactions with plaintiff. Plaintiff claims that the investigation "was intended solely as an attempt to embarrass and intimidate" her and "to lower her reputation within the organization."

In January 2016 Sudduth again attempted to promote plaintiff as part of a reorganization of the IT department. Plaintiff alleges that, rather than being promoted, she was unexpectedly

4

moved from the IT department back to General Administration. As part of that move, plaintiff claims that she was stripped of many of her MA3 responsibilities, which were reassigned to Caucasian employees and, as a result, (a) it is more difficult for plaintiff to compete in the promotional process, and (b) she could be (but has not been) demoted to the MA2 position. Plaintiff claims that her treatment amounts to a hostile workplace created by defendants that "is designed to wear down" plaintiff and make her quit. Plaintiff further alleges that, of the fourteen MWRDGC employees who hold either the MA3 or MA4 position, only two are African-American (one being plaintiff) and the rest are Caucasian. According to plaintiff, this is the result of a hiring process that denies equal opportunity to minorities such as herself.

Plaintiff filed a complaint with the EEOC on May 3, 2016, alleging retaliation for her 2002 lawsuit and continuing discrimination based on race. The EEOC issued plaintiff a right to sue notice on May 9, 2016.

## DISCUSSION

**I.      Legal Standard**

A motion brought under Rule 12(b)(6) challenges the sufficiency of the complaint. <u>Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7</u>, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). Though short and plain, the pleading must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claim rests. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." <u>Id</u>.

5

This standard demands that a complaint contain sufficient factual matter to state a claim that is plausible on its face and allege more than legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When ruling on a Rule 12(b)(6) motion to dismiss, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004).

## II. Analysis

### A. Counts I and II: Section 1981

In Counts I and II, plaintiff asserts that defendants violated her rights under 42 U.S.C. § 1981 by "inhibit[ing] Plaintiff's promotional contract opportunities during her employment." Section 1981 guarantees "[a]ll persons within the jurisdiction of the United States . . . the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws . . . ." 42 U.S.C. § 1981(a). Defendants argue that plaintiff's Section 1981 claims should be dismissed for a number of reasons, the first being that plaintiff has not sufficiently pled any enforceable contractual rights.

The parties agree that plaintiff's employment is governed by the Metropolitan Water Reclamation Act ("the Act"), 70 ILCS 2605/1, et seq. Defendants argue that the Act does not support the existence of an employment contract between plaintiff and any of the defendants, and that plaintiff has failed to sufficiently plead facts to show that such a contract existed. In

response, plaintiff accuses defendants of grossly misinterpreting the Act and asserts that she has sufficiently alleged an employment contract, in part by alleging that she is a civil service employee. The court need not decide the issue because plaintiffs alleging adverse employment actions such as failure to promote need not allege an employment contract. See Daniels v. Fed. Reserve Bank of Chicago, 2003 WL 21542496, at *3 (N.D. Ill. July 3, 2003) ("These adverse employment actions directly affect the plaintiffs' contractual rights regarding 'wages, benefits, duties and working conditions' . . . recognized as part of the at-will contractual relationship."). Accordingly, whether plaintiff has sufficiently pled an employment contract is not dispositive.

Defendants next argue that, even if plaintiff has alleged an employment contract, plaintiff's failure to promote claims must be dismissed because she does not, and never has had, a contractual right to a promotion. The court agrees, but the analysis is not so simple. Plaintiff argues not that she was entitled to any particular promotion, but rather that she had a right to be considered for promotion without regard to her race. The Act, as quoted by defendants, supports plaintiff's argument, see 720 ILCS 2605/4, and plaintiff has sufficiently alleged that defendants violated her right to fair consideration. Such allegations state a claim under Section 1981. See Daniels, 2003 WL 21542496, at *3.

Defendants' second basis for dismissal is that many of plaintiff's Section 1981 claims are time-barred. Defendants argue that Section 1981 claims regarding the performance and enjoyment of current contracts are subject to a four-year statute of limitations, and Section 1981 claims regarding interference with prospective contracts are subject to a two-year statute of limitations. See Campbell v. Forest Pres. Dis. Of Cook Cty., Ill., 752 F.3d 665 (7th Cir. 2014). The court agrees. In her response brief, plaintiff completely ignores this argument and the court

7

sees no reason to disregard it. See Garza v. Cervantes, 2015 WL 468748, at *1 (N.D. Ill. Feb. 3, 2015) ("If a court is given plausible reasons for dismissing a complaint, the court is not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation omitted). Plaintiff filed her original complaint on August 12, 2016. Accordingly, plaintiff's discrimination and retaliation claims based on alleged occurrences prior to August 12, 2012, are dismissed. Plaintiff's failure to promote claims based on alleged occurrences prior to August 12, 2014, are also dismissed.

Defendants further argue that plaintiff's amended complaint fails to state a claim against the individual defendants both individually and in their official capacities. Taking the latter argument first, the court agrees. "[A] suit against a public official in his 'official capacity' is a suit against the entity of which the official is an agent." McGreal v. Vill. of Orland Park, 2013 WL 3984477, at *12 (N.D. Ill. Aug. 2, 2013). Because plaintiff has named MWRDGC as a defendant, "naming the individual defendants in their official capacities is superfluous." Id. Plaintiff's arguments to the contrary are unavailing. Accordingly, the official capacity claims against the individual defendants are dismissed.

As for plaintiff's claims against the defendants in their individual capacities, the court finds that plaintiff has stated a claim. According to defendants, plaintiff's claims against the individual defendants fail because she has not sufficiently alleged racial discrimination that resulted in the deprivation of a federal right. The court disagrees. Plaintiff alleges that in 2015 Korcal denied plaintiff a promotion to the MA4 position and that St. Pierre and Korcal subsequently opened an overly intrusive investigation into an ultimately meritless "unprofessional conduct" complaint against plaintiff with the intent to embarrass and humiliate

8

her and to lower her reputation within MWRDGC. Plaintiff further alleges that in January 2016 St. Pierre rejected a proposed restructuring of plaintiff's department that would have resulted in plaintiff being promoted, and that she was instead moved to a different department and stripped of many of her responsibilities. Plaintiff claims that Korcal and McElligott "agreed upon" St. Pierre's decision to deny plaintiff this promotion that her direct supervisor had proposed. Additionally, plaintiff alleges that defendants' actions were based on her race and in retaliation for her 2002 EEOC complaint and lawsuit. Accepting these factual allegations as true and drawing all reasonable inferences in the plaintiff's favor, as the court must, the amended complaint states a claim of discrimination and retaliation against defendants in their individual capacities.

Finally, defendants argue that plaintiff's Section 1981 claim against MWRDGC "must" be dismissed because plaintiff has failed to allege that her rights were deprived due to a municipal policy or custom, as required. See Kujawski v. Bd. of Com'rs of Bartholomew County, Ind., 183 F.3d 734, 737 (7th Cir. 1999). To meet this burden, the parties agree that plaintiff must show one of the following: "proof of an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority." Id. Defendants claim rather tersely that the "Amended Complaint fails to plead any basic facts to state a policy or custom claim as required by the foregoing criteria." The court disagrees. Plaintiff alleges that MWRDGC's hiring and promotion process intentionally denies equal opportunity to minorities such as herself and that she has been denied fair consideration as a result. As evidence of this allegation, plaintiff claims that, of the fourteen MWRDGC employees who hold either the MA3 or MA4 position, only two

9

are African-American (one being plaintiff) and the rest are Caucasian. These allegations are sufficient to allege a widespread practice that caused plaintiff's loss of the opportunity to be considered for promotion without regard to her race. Accordingly, the amended complaint adequately states a Section 1981 claim against MWRDGC.

For the reasons explained above, defendants' motion to dismiss Counts I and II is granted as to plaintiff's discrimination and retaliation claims based on alleged occurrences prior to August 12, 2012, and failure to promote claims based on alleged occurrences prior to August 12, 2014. The motion is also granted as to the individual defendants in their official capacities. The motion as to Counts I and II is denied on all other grounds.

### B. Counts III and IV: Title VII

Defendants argue for dismissal of plaintiff's Title VII claims on two grounds. Defendants first argue that the individual defendants cannot be held liable for violations of Title VII and "must" be dismissed as to Counts III and IV. Plaintiff insists that inclusion of the defendants in their official capacities is proper and "essentially renders her complaint an action against [ ] a municipality." In this regard, plaintiff seems to confuse her Title VII claims with her Section 1981 claims, but her argument would fail either way. Title VII does not impose personal liability on agents of an employer, but rather "invokes the doctrine of respondeat superior to make employers responsible for the actions of their agents." Thanongsinh v. Bd. of Educ., 462 F.3d 762, 772 n.7 (7th Cir. 2006). Because the individual defendants are employees rather than employers under Title VII, a claim against the individual defendants in their official capacities is duplicative of a claim against the employer and is properly dismissed. Id.

Accordingly, defendants' motion is granted as to plaintiff's Title VII claims against the individual defendants.

Defendants also argue that plaintiff's Title VII claims are time-barred. Plaintiff filed a complaint with the EEOC on May 3, 2016, alleging retaliation for her 2002 lawsuit and continuing discrimination based on race. According to defendants, plaintiff has failed to allege discriminatory acts within 300 days of the date she filed her EEOC complaint, placing her claims outside the statute of limitations. See Marlowe v. Bottarelli, 938 F.2d 807, 813 (7th Cir. 1991). Defendants are mistaken for two reasons. First, plaintiff alleges that defendants denied her a promotion that was recommended by her direct supervisor, and instead moved her to a different department and stripped her of many of her responsibilities in January 2016, well within the 300-day statute of limitations.

Second, the Seventh Circuit has flatly rejected the "absurd" argument that an employee who has been repeatedly discriminated against by her employer cannot challenge the discriminatory acts unless she files an EEOC charge within 300 days of the first act. Stuart v. Local 727, Int'l Broth. of Teamsters, 771 F.3d 1014, 1018 (7th Cir. 2014). Because plaintiff alleges ongoing discrimination and retaliation, she may seek relief for allegedly discriminatory acts that occurred outside of the 300-day statute of limitations. See Peterson v. Draper & Kramer Mortg. Corp., 2002 WL 1769987, at *3 (N.D. Ill. Aug. 1, 2002) ("The continuing violation doctrine allows a [Title VII] plaintiff to get relief for time-barred actions by linking them to acts occurring within the limitations period.") (internal citation omitted). Accordingly, plaintiff's Title VII claims are not time-barred and defendants' motion to dismiss counts III and IV is denied as to MWRDGC.

11

## C. Count V: Conspiracy

Defendants argue that plaintiff's conspiracy claim "must" be dismissed because she has failed to support the claim with factual allegations and it is barred by the intra-corporate conspiracy doctrine. The court need not address the first argument because it finds that Count V is barred by the intra-corporate conspiracy doctrine.

"The Seventh Circuit has adopted the general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees." Allen v. City of Chicago, 828 F. Supp. 543, 564 (N.D. Ill. 1993). Accordingly, the intra-corporate conspiracy doctrine holds that "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' under § 1985 when acts within the scope of their employment are said to be discriminatory or retaliatory." Hartman v. Bd. of Trustees of Cmty. Coll. Dist. No. 508, Cook County, Ill., 4 F.3d 465, 469 (7th Cir. 1993) (internal quotation omitted). The doctrine has been extended to include municipal corporations such as MWRDGC. See Allen, 828 F. Supp. at 564. Defendants argue that the discriminatory acts plaintiff complains of - promotion and employment decisions - fall squarely within the doctrine and preclude a conspiracy claim. The court agrees. Plaintiff attempts to defeat this argument by alleging that defendants acted outside of the scope of their employment, but the facts alleged suggest otherwise.

Plaintiff further argues that the intra-corporate conspiracy doctrine does not apply where the plaintiff alleges "numerous acts undertaken by several corporate agents." Unfortunately for plaintiff, the one case that she cites to support this proposition, Hartman, 4 F.3d 465, actually rejects it. Although the Hartman court acknowledged that some conspiracies, for example the

12

Ku Klux Klan, could be so broad as to fall outside of the intra-corporate conspiracy doctrine, it found that the doctrine applied to an alleged conspiracy to discriminate against Latinos carried out by two employees. Id. at 470–71. Because the conspiracy alleged by plaintiff much more closely resembles the type of conspiracy to which the intra-corporate conspiracy has been held to apply, the court finds that it does apply and grants defendants' motion as to Count V.

### D. Punitive Damages

Finally, defendants argue that plaintiff is barred from seeking punitive damages against MWRDGC and the individual defendants in their official capacities because they are immune from liability for punitive damages. Plaintiff concedes this, but argues that she may seek punitive damages from the individual defendants in their individual capacities. Defendants do not address this argument in their reply and the court agrees. Accordingly, defendants' motion is denied as to plaintiff's ability to seek punitive damages from defendants in their individual capacities.

### CONCLUSION

For the foregoing reasons, defendants' motion is granted as to plaintiff's Section 1981 claims against the individual defendants in their official capacities and plaintiff's Section 1981 claims of discrimination and retaliation based on alleged occurrences prior to August 12, 2012, and failure to promote claims based on alleged occurrences prior to August 12, 2014. Additionally, defendants' motion is granted as to plaintiff's Title VII claims against the individual defendants and plaintiff's conspiracy claim. Plaintiff is directed to file a second

amended complaint conforming to this opinion on or before May 24, 2017.[4]  Defendants' motion is denied on all other grounds.

Defendants are directed to answer the second amended complaint on or before June 14, 2017.  The parties are directed to file a joint status report using this court's form on or before June 19, 2017.  This matter is set for a report on status on June 28, 2017, at 9:00 a.m.

**ENTER:**      **May 3, 2017**

_____
**Robert W. Gettleman
United States District Judge**

---

[4] The court encourages plaintiff to streamline the remaining allegations in the second amended complaint in order to simplify the litigation going forward.